UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LUIS V.,[1]

        **Plaintiff,**

        v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

**Case No. 1:20-cv-12462**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Luis V. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.**    **PROCEDURAL HISTORY**

On August 23, 2011, Plaintiff protectively filed his application for benefits, alleging that he has been disabled since September 17, 2010, due to a number of physical and mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

impairments. R. 103, 112, 328–36. The application was denied initially and upon reconsideration. R. 117–21, 125–27. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 128–30. A number of administrative hearings were held, at which Plaintiff proceeded without the assistance of counsel. R. 84-87 (October 2, 2013), R. 73-83 (July 17, 2014), R. 61-72 (February 9, 2015), R. 40-60 (August 6, 2015). A decision dated September 23, 2015, concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 23, 2011, the date on which the application for benefits was filed, through the date of that decision. R. 27–35. Plaintiff appealed to this Court from that decision, R. 577–81, and on December 26, 2018, United States District Judge Robert B. Kugler reversed that decision on the ground that the ALJ had not obtained a valid waiver of Plaintiff's statutory and regulatory right to counsel and that Plaintiff had been prejudiced by that lack of counsel. R. 582–94. The matter was remanded for further proceedings. *Id.*

Following remand, the Appeals Council remanded the case to an Administrative Law Judge for further proceedings consistent with the Court's remand order, including offering Plaintiff the opportunity for another hearing. R. 599.

Administrative Law Judge ("ALJ") Trina Moore held a hearing on April 28, 2020, at which Plaintiff, who was then proceeding with the assistance of counsel, appeared and testified, as did a vocational expert. R. 545–76. An interpreter was also present. *Id.* In a partially favorable decision dated August 4, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to March 20, 2019, but that he had become disabled on that date and continued to be disabled through the date of that decision. R. 525–35 ("2020 decision").

2

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 7, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On October 8, 2020, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must nevertheless contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

5

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ's 2020 DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 23, 2011, the date on which the application was filed, and the date of the decision. R. 526.

At step two, the ALJ found that, as of the application date, Plaintiff suffered from the following severe impairments: spina bifida occulta deformity; lumbar spondylosis; polysubstance disorder; schizophrenia; depressive disorder; bipolar disorder; anxiety disorder and obsessive compulsive disorder ("OCD"). *Id*. The ALJ also found that Plaintiff's diagnosed attention deficit hyperactivity disorder ("ADHD") and his alleged traumatic brain injury were not severe. *Id*.

At step three, the ALJ found that, since August 23, 2011, Plaintiff had not suffered an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 526–28.

At step four, the ALJ found that, prior to March 20, 2019, Plaintiff had the RFC to perform light work[4] subject to the following limitations: He "could perform simple routine tasks on a continuous basis with simple instructions and simple work related decisions involving only occasional interaction with co-workers and supervisors, but no interaction with the public in person or on the telephone for work related duties." R. 528–32. The ALJ also found that, beginning on March 20, 2019, that RFC included additional limitations: Plaintiff could "perform simple routine tasks on a continuous basis with simple instructions and simple work related decisions involving only occasional interaction with co-workers and supervisors, but no interaction with public and requires constant redirection due to mental impairments that would

---

[4] Confusingly, the ALJ's RFC for work prior to March 20, 2019, first states that Plaintiff is capable of only light work. R. 528. However, the summary paragraph also states that, prior to March 20, 2019, Plaintiff had the RFC "to perform a *full range of work at all exertional levels*." R. 532 (emphasis added). The Court presumes that the latter statement was a typographical error, as the ALJ in the second to last paragraph of the written 2020 decision explains, *inter alia*, that Plaintiff's "*limitation to light work* is based on his bifida deformity given his complaints of back pain even though there is no evidence that it results in any limitations in walking." R. 532 (emphasis added).

8

affect consistent concentration throughout the workday." R. 532–33.

The ALJ found that Plaintiff had no past relevant work. R. 533. At step five and relying on the testimony of the vocational expert, the ALJ found that, prior to March 20, 2019, a significant number of jobs–*i.e.*, approximately 1,800,000 jobs as an assembler; approximately 924,000 jobs as a cleaner; approximately 557,000 jobs as an inspector–existed in the national economy and could be performed by Plaintiff. R. R. 533–34. However, the ALJ also found that, beginning on March 20, 2019, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to March 20, 2019, but had become disabled on that date and continued to be disabled through the date of the decision. R. 534–35. Finally, the ALJ found that Plaintiff's substance use disorder was not a contributing factor material to the determination of disability, finding that Plaintiff "has been clean and sober since the alleged onset date, yet continues to experience symptoms of schizophrenia, anxiety and depression. Accordingly, the claimant would still be disabled in the absence of the substance use disorder(s)." R. 535.

Plaintiff disagrees with the ALJ's findings at step four and further contends that the ALJ erred in finding that he became disabled only as of March 20, 2019; he asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 23; *Plaintiff's Reply Brief*, ECF No. 31. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28.

## IV. DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's RFC determination for the period prior to March 20, 2019, because the ALJ failed to account for Plaintiff's mental impairments, particularly his OCD. *Plaintiff's Brief*, ECF No. 23, pp. 33–37; *Plaintiff's Reply Brief*, ECF No. 31, pp. 4–6. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ must assess "the nature and extent" of a claimant's mental and/or physical limitations "and then determine [the claimant's RFC] for work activity on a regular and continuing basis." 20 C.F.R. § 416.945(b), (c); *see also* SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ must also consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that, prior to March 20, 2019, Plaintiff had the RFC to perform a limited range of light work:

> He could perform simple routine tasks on a continuous basis with simple instructions and simple work related decisions involving only occasional interaction with co-workers and supervisors, but no interaction with the public in person or on the telephone for work related duties.

R. 528 ("the pre-March 20, 2019 RFC").[5] In making this determination, the ALJ concluded, *inter alia*, that lay witness statements were "not persuasive[,]" reasoning as follows:

> Statements were also provided by the claimant's father, mother and family friend (Exhibit 4E [R. 364–72], 12E [R. 407], 28E [R. 801–02] & 29E [R. 803–06]).[6] These statements are not persuasive, as they are lay opinions based upon casual observation, rather than objective medical examination and testing. Further, they are potentially influenced by loyalties of family and friendship. They certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities. Ultimately, these statements are not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly consistent with the evidence of the record.

R. 529.

In challenging the ALJ's pre-March 20, 2019 RFC determination, Plaintiff contends that the ALJ failed to account for limitations flowing from Plaintiff's OCD, particularly Plaintiff's dysfunctional behavior that leads to, *inter alia*, showering multiple times a day. *Plaintiff's Brief*, ECF No. 23, p. 33. Plaintiff contends that the record contains uncontroverted evidence of his

---

[5] As previously noted, the ALJ determined that, beginning March 20, 2019, Plaintiff's RFC was further limited: Plaintiff could "perform simple routine tasks on a continuous basis with simple instructions and simple work related decisions involving only occasional interaction with co-workers and supervisors, but no interaction with public and *requires constant redirection due to mental impairments that would affect consistent concentration throughout the workday*." R. 532 ("RFC beginning on March 20, 2019") (emphasis added).

[6] Although the ALJ refers to a statement by Plaintiff's father, none of the exhibits cited by the ALJ contains a statement of the father. *See id*. In addition, the Court notes that one of the exhibits cited by the ALJ, Exhibit 12E, is a letter handwritten by Plaintiff's in Spanish. R. 407. Notably, this letter, which has been translated into English at R. 94, simply advises that Plaintiff's mother is his representative in his Social Security case, which was pending in Puerto Rico at the time the letter was written. R. 94.

11

compulsive showering habits, including, *inter alia*, evidence from Plaintiff's mother, Irma Velez, and family friend, Ida Morales, as well as notes from a consultative examination conducted by Lewis Lazarus, Ph.D., on March 17, 2015. *Id*. at 34–35 (citations omitted). Plaintiff further argues that the ALJ improperly rejected the lay witness testimony "as unpersuasive because lay testimony is 'based upon casual observation' as opposed to medical testing" when, Plaintiff contends, statements about the frequency of Plaintiff's showering require no special medical training. *Id*. at 36. Plaintiff goes on to argue that the ALJ's failure to credit this OCD evidence resulted in a flawed RFC for the period prior to March 20, 2019, and that the RFC for that period should have also included the work preclusive concentration limitations, such as "constant redirection," which the ALJ included for the period beginning on March 20, 2019. *Id*. at 36–37 (citations omitted). Plaintiff therefore contends that the ALJ's omission in this regard amounts to reversible error. *Id*.

The Acting Commissioner argues that the ALJ considered the evidence, "including symptoms resulting from Plaintiff's *alleged* obsessive compulsive disorder, and assessed an RFC based on the overall evidence to accommodate Plaintiff's legitimate conditions[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, p. 12 (citations omitted) (emphasis added); *see id*. at 13 ("The ALJ exercised his [sic] responsibility of formulating the RFC. The ALJ considered and discussed the evidence regarding Plaintiff's obsessive behavior along with the other evidence and reached the RFC. The ALJ is not required to accept all of Plaintiff's alleged symptoms or limitations."). In reply, Plaintiff contends that the Acting Commissioner's conclusory arguments fail to meaningfully respond to Plaintiff's arguments. *Plaintiff's Reply Brief*, ECF No. 31, pp. 5–6.

Plaintiff's arguments are well taken. As a preliminary matter, although the Acting Commissioner refers to Plaintiff's "alleged" OCD, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, p. 12, the ALJ specifically found that, since the application date, Plaintiff's severe impairments in fact included OCD. R. 526. The uncontroverted lay evidence established Plaintiff's obsessive showering compulsions, which resulted in Plaintiff taking multiple showers throughout the day, even interrupting conversations and visits at others' homes. R. 46–47 (reflecting the August 6, 2015, testimony of family friend that Plaintiff has taken four showers in the span of two hours at her home and has showered 53 times in one day), 51–52 (reflecting the August 5, 2015, testimony of Plaintiff's mother that Plaintiff "goes everywhere, hospitals and houses, and has to take a shower"), 363 (reflecting the October 18, 2011, Adult Disability Report that Plaintiff "takes like 40 showers per day"), 802 (reflecting the January 8, 2020, statement from a family friend, that Plaintiff would take "about eight showers in the span of an hour"), 803 (reflecting the January 8, 2020, statement of Plaintiff's mother's that Plaintiff bathes "excessively, around 50 or more times in the day and night"). The ALJ's justification for rejecting this lay evidence—that it was "based upon casual observation, rather than objective medical examination and testing" and that the lay witnesses "are potentially influenced by loyalties of family and friendship," R. 529—does not sufficiently explain her rejection of such evidence. *See Quinn v. Kizakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *7 (M.D. Pa. Jan. 18, 2022) ("[T]he ALJ's reasoning for finding [the plaintiff's wife's] statement less than persuasive because she is not medically trained, or a disinterested party is improper" where her "statements were not intended to serve as a medical opinion and were offered to show her personal observations of her husband" and that "an ALJ cannot discount a lay witness's report solely because he or she is not a disinterested witness") (citations omitted); *A.E. v. Comm'r of Soc. Sec.*,

No. CV 20-11492, 2021 WL 5905704, at *7 (D.N.J. Dec. 14, 2021) ("If it were the case that lay witness statements must be partially rejected purely on the basis that they are not medical evidence, then that would be true of all lay witness statements, and they would all be assigned partial weight as a rule. But this is not the case."); *Dougherty v. Saul*, No. 3:20-CV-00504, 2021 WL 3077504, at *6 (M.D. Pa. July 21, 2021) ("It was improper for the ALJ to discount [the plaintiff's husband's] non-medical opinion on grounds that he is not a medical expert. . . . Remand is necessary for consideration of this evidence and in what respect it is or is not consistent with the medical record."); *Vaughn v. Berryhill*, No. CV 17-5426, 2019 WL 13222277, at *5 (D.N.J. June 10, 2019) ("Further, it is unreasonable to reject a third-party functional report from a family member simply for the reason that it is a third-party functional report from a family member. They are all lay opinions, and – as such – none of them are based on medical examinations. If such reports could be rejected out of hand on this basis, the Agency would not solicit them on official agency forms.").

To the extent that the ALJ rejected the lay evidence as "not outweigh[ing] the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities[,]" R. 529, it is not clear from this assertion—or from the ALJ's discussion of the record as a whole—what medical evidence conflicts with the lay testimony regarding Plaintiff's obsessive showering. R. 528–32. Similarly, the ALJ's finding that the lay "statements are not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly consistent with the evidence of the record[,]" R. 529, does not aid the Court in its analysis; the ALJ has "set forth above" no explanation for her discounting Plaintiff's subjective statements. *See* R. 528–29. If the ALJ intended to refer to her consideration of Plaintiff's subjective statements later in the discussion, it is not apparent how that consideration—

14

without additional explanation from the ALJ–renders unpersuasive the lay evidence regarding Plaintiff's OCD and obsessive showering. *See* R. 532.

Similarly, the Court cannot conclude that the ALJ's improper rejection of the lay evidence regarding Plaintiff's behavior flowing from his severe OCD is harmless in this case. The RFC for the period prior to March 20, 2019, does not contain a limitation for time off-task or for a limitation of "constant redirection," as does the later RFC. R. 528, 532. Although the ALJ referred in passing to Dr. Lazarus' comment that Plaintiff reported showering 15-20 times per day, R. 531 (citing R. 476), the ALJ did not discuss Plaintiff's obsessive showering when crafting the pre-March 20, 2019 RFC, nor did she otherwise explain why this obsessive-compulsive behavior had no impact on the earlier RFC. R. 528–32. This omission and failure to explain takes on greater significance when one considers that the vocational expert testified that the need for constant redirection due to mental impairments would be work-preclusive. R. 572–73. The vocational expert further testified that a person cannot be off task more than five percent of the time (20 minutes) in a production job and no more than ten percent off task in other forms of work. R. 573. Based on this record, the Court cannot conclude that substantial evidence supports the RFC for the period prior to March 20, 2019, where the ALJ improperly rejected lay testimony regarding Plaintiff's alleged excessive daily showering flowing from his OCD and where the ALJ failed to consider the impact of this behavior on the RFC for that period. *See Litterini v. Comm'r of Soc. Sec.*, No. CIV.A. 2:13-1652, 2014 WL 4925121, at *3 (W.D. Pa. Sept. 30, 2014) ("The ALJ again fails to mention, however, what role, if any, Plaintiff's OCD played in reaching this RFC finding. In short, the ALJ's opinion is unclear as to whether he accounted for Plaintiff's OCD in his mental RFC finding. . . . On remand, the ALJ must clarify

his findings with respect to any limitations relating to Plaintiff's OCD and explain how, if at all, his RFC finding accounts for such limitations.").

## V.   CONCLUSION

For these reasons,[7] the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the lay evidence regarding excessive showering resulting from Plaintiff's OCD and its impact, if any, on the pre-March 20, 2019 RFC, the Court does not consider those claims. Nevertheless, the Court notes that it shares Plaintiff's concerns regarding the ALJ's selection of the disability date of March 20, 2019. The ALJ found that, beginning on that date, Plaintiff's allegations regarding his symptoms and limitations were "consistent with the evidence[,]" characterizing Plaintiff's treatment prior to that date as "routine and conservative" with medical management and hospitalizations for "substance abuse" and pointing to Plaintiff's reported hallucinations and suicidal and homicidal ideations, anxiety, and that in April 2020, Plaintiff "indicated that he was sober and free of all substances[.]" R. 532–33. However, Plaintiff was involuntarily hospitalized for psychiatric treatment in March 2013 and April 2014, he expressed suicidal ideation and he repeatedly reported auditory and visual hallucinations. R. 30, 52, 66–67, 483–84, 486, 507, 840–41, 845, 847, 1032. In addition, there was lay testimony that Plaintiff was different mentally and behaviorally after an automobile accident that occurred on the alleged onset date of August 23, 2011. R. 567–69. Notably, objective testing administered to Plaintiff in April 2014 revealed an "extremely low" total score. R. 494–95 (which appears to be the English translation of R. 493, 496); *see also Sinuhe v. Comm'r of Soc. Sec.*, No. 18-CV-03562-LB, 2019 WL 3536409, at *6 (N.D. Cal. Aug. 2, 2019) ("The Repeatable Battery for the Assessment of Neuropsychological Statues (RBANS)-Form A measures 'cognitive functioning in the areas of memory, attention, visuospatial abilities, and language functioning.'") (citation omitted); *Harris v. Astrue*, No. 11CV5569-BHS-JRC, 2012 WL 2871781, at *6–7 (W.D. Wash. May 17, 2012), *report and recommendation adopted*, No. C11-5569BHS, 2012 WL 2871915 (W.D. Wash. July 12, 2012) (explaining that RBANS is an objective test). Moreover, despite suggesting at one point that substance abuse played a role in selecting the March 20, 2019 date, *see* R. 532, the ALJ expressly found that Plaintiff had been clean and sober since the alleged onset date of August 23, 2011, and that Plaintiff's substance abuse disorder was not a contributing factor material to the determination of disability. R. 535. Based on this record, the Court is unable to understand why the ALJ selected March 20, 2019, as the disability onset date. In short, on remand, it would be helpful if the ALJ better explained her reasons for selecting the disability onset date of March 20, 2019.

Finally, the Court notes that some of the record evidence, including evidence from 2012 through 2014, is in Spanish. *See, e.g.*, R. 450–62, 853–92, 900–86, 988–1021. While some of these records may have been translated into English in other parts of the record, R. 483–513, it is not immediately apparent if all the Spanish records have been translated into English. On

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 9, 2023                             *s/Norah McCann King*
                                                   NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

---

remand, it would be helpful if the ALJ confirmed that all records have been translated into English. *See Rivera v. Comm'r of Soc. Sec.*, No. 21-CV-1498, 2022 WL 3210441, at *9–10 (S.D.N.Y. Aug. 9, 2022) ("Because significant portions of these records were not translated into English, the ALJ could not competently assess the record to determine the extent of Plaintiff's symptoms during this time period. This failure to obtain complete translation of the documents results in an incomplete record. . . . The failure to develop the record in this regard prejudiced Plaintiff because the untranslated portions in question related to the severity of his mental health symptoms during a key time period . . . . On remand, the ALJ should develop the record by obtaining translations of the Spanish portions of the medical records and should ascertain whether these notes impact her ultimate determinations") (citations omitted); *Velez o/b/o S.V. v. Colvin*, No. 14-CV-6481-CJS, 2017 WL 814693, at *13 (W.D.N.Y. Mar. 2, 2017) ("The portion in Spanish is not translated, but appears to elaborate on the goal more than the English portion. The ALJ presumably did not have a translation either (since none appears in the Record). . . . Therefore, the Court finds that without the information that may be contained in the Spanish portion, the ALJ could not rely on the exhibit to support his conclusion that S.V. did not have any limitations in this domain. On remand, the ALJ should develop the record by obtaining translations of the Spanish portions.").